**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

**GARY FOY,**                                    )
                                                 )
                                                 )
          **Plaintiff,**                         )
                                                 )
          **v.**                                 )          **CIVIL ACTION NO. 5:18-CV-276 (MTT)**
                                                 )
**BARBARA M. BARRETT, Secretary,**               )
**Department of the Air Force,**                 )
                                                 )
                                                 )
          **Defendant.**                         )
_____                 )

## ORDER

Defendant Barbara M. Barrett, in her official capacity as Secretary of the United States Department of the Air Force, has moved for summary judgment. For the following reasons, that motion (Doc. 36) is **GRANTED**.

### I. BACKGROUND[1] [2]

In 2015, a Supervisory Systems Engineer position ("SSE position") became available at Robins Air Force Base. Doc. 36-2 ¶¶ 3-4. Plaintiff Gary Foy, an African American man, applied for the job, which would have been a promotion for him because the SSE position was a GS-14 position, and at the time he was in a GS-13 position. *Id.* ¶¶ 2, 3; Doc. 1 ¶¶ 7, 8. A month after applying, Foy was selected for an interview along

---

[1] Unless otherwise stated, the facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

[2] In responding to the defendant's motion for summary judgment, Foy failed to controvert the facts contained in the defendant's statement of material facts. Moreover, Foy did not have a "facts" section of his brief (or any other independently labeled section, for that matter). Pursuant to Local Rule 56, the appropriately asserted and cited facts contained in the defendant's statement of material facts (Doc. 36-2) are deemed admitted. Still the Court has confirmed that the relevant facts are indeed undisputed.

with seven others; two applicants decided not to interview after they were selected, including one African American man.  Doc. 36-2 ¶¶ 7-9.  The other five interviewees were white.  Doc. 36-2 ¶ 10.

The official in charge of selecting who would fill the SSE position was Mark Smallwood; he also would be the selected individual's direct supervisor.  *Id.* ¶¶ 12-13.  The interview panel consisted of three individuals: Smallwood; Russell Alford, a senior official; and Jill Burgess, a member of the Engineering Functional Home Office.  *Id.*; Docs. 36-12 at 2; 1 ¶¶ 31, 32.  The six applicants were asked five questions in the span of forty-five minutes, and the panelists graded the applicants with a numerical score, which was then converted to a letter grade of A, B, or C.  Docs. 36-2 ¶¶ 15-18; 38 at 88:9-13.  The questions tested the applicants' knowledge, experience, leadership qualifications, communication skills, and time management.  Doc. 36-2 ¶¶ 16, 19-22.  The applicants' total grades were calculated based on both the interview scores as well as their resumes.  Doc. 36-3.  Foy's total grade ranked fifth of the six interviewees.  *Id.*

None of the applicants were selected.  Doc. 36-2 ¶ 25.  Smallwood stated he believed that none of the "candidates met the right mix of technical expertise and managerial expertise [he] felt the position required."  Doc. 39-1 at 5.  The position was filled later, however, by Cynthia Dallis.  Docs. 36-2 ¶¶ 32-33; 1 ¶ 22.  Dallis was already a GS-14 and was laterally assigned (as opposed to being promoted) to the SSE position.  Doc. 36-2 ¶¶ 32-33.  Dallis had been employed at Robins Air Force Base since 1986, had been a GS-14 since 2008, and had served in multiple supervisory roles.  Doc. 38-9.  Dallis is an African American woman.  Doc. 1 ¶ 22.

Upset that he was not awarded the promotion, Foy contacted the Air Force's Equal Employment Opportunity Office in October 2015.  Doc. 36-2 ¶ 42.  Foy later filed a formal complaint with the EEOO alleging race discrimination.  Doc. 1 ¶ 38.  After waiting more than 180 days after filing that administrative complaint, Foy filed suit with the Court.  *Id.* ¶ 42; Doc. 36-2 ¶ 49.

Not surprisingly, the defendant argues that she is entitled to summary judgment because Foy cannot satisfy *McDonnell Douglas*'s fourth prong because the SSE position was not filled by someone outside his protected class.  Doc. 36-1 at 10-14.  The defendant also argues that even if Foy could make out a prima facie case, the defendant has carried her burden of articulating a legitimate, non-discriminatory reason for not promoting Foy.  *Id.* at 15-18.

The Court believes Foy argues the following.  First, the manner in which the panelists scored the applicants' interviews is evidence of discrimination against Foy because each interviewee was scored by two panelists very consistently.  Doc. 49 at 4-9.  Second, a different panelist scored the applicants' resumes on an inconsistent basis with an "extremely wide difference between [the other two panelists.]"  *Id.* at 10.  Third, Foy argues he was highly qualified for the position but was not selected.  *Id.* at 19-20.  Finally, Foy argues that the defendant violated Air Force policy by not hiring Dallis through an interview process.  *Id.* at 12-16.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on

the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[]—that is, point[] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to

address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ….The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

**A.  *McDonnell Douglas* Framework**

A Title VII plaintiff may prove his case circumstantially when there is no direct evidence of discrimination.[3]  The framework for analyzing circumstantial evidence to establish a prima facie case of discrimination is found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination.

"A prima facie case of discriminatory failure to promote requires the plaintiff to show that [1] he is a member of a protected class; [2] he was qualified for and applied for the promotion; [3] he was rejected; and [4] other equally or less qualified employees

---

[3] "[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory attitude correlating to the discrimination or retaliation complained of by the employee."  *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990).  Direct evidence is "evidence which, if believed, would prove the existence of a fact without inference or presumption."  *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989) (citation omitted).  Although Foy states that "the reassignment of Cynthia Dallis … is prima facie proof of a direct violation of Gary Foy's constitutional rights," he does not specify whether he is offering this as direct or circumstantial evidence.  The Court views this odd assertion as—at most—circumstantial evidence because the Court cannot fathom how merely selecting Dallis, an African American woman, for a coveted position is direct evidence of racial discrimination against Foy, an African American man.  Foy otherwise does not allege that there is direct evidence of racial discrimination in this case, therefore, the survival of his case depends on circumstantial evidence analyzed through the *McDonnell Douglas* framework

who were not members of the protected class were promoted." *Evans v. McClain of Ga. Inc.*, 131 F.3d 957, 963 (11th Cir. 1997) (italics and citation omitted).

If a plaintiff establishes that prima facie case, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). This burden of production means the employer "need not persuade the court that it was *actually* motivated by the proffered reasons" but must produce evidence sufficient to raise a genuine issue of fact as to whether it discriminated against the plaintiff. *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added) (quotation marks and citation omitted).

A plaintiff then has the opportunity to show that the employer's stated reason is a pretext for discrimination. This may be done "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "If a plaintiff produces sufficient evidence that the employer's proffered reason is merely pretextual, that evidence may sometimes be enough to preclude summary judgment in favor of the employer." *Kragor*, 702 F.3d at 1309.

*1. Prima Facie Case*

The defendant does not dispute that Foy has satisfied the first three prongs of the prima facie case. Foy was a member of a protected class, he applied for a position for which he was qualified,[4] and he was rejected. *See Evans*, 131 F.3d at 963. The defendant argues that Foy cannot satisfy the fourth prong, because an African

---

[4] As will be seen, Foy's qualifications are relevant to pretext, but he possesses the minimal qualifications necessary to establish a prima facie case. Doc. 36-2 ¶ 10.

American woman was selected for the position instead of Foy, an African American man.  *See id*; Doc. 36-1 at 10-14.

Foy does not dispute that Dallis was given the job for which he applied or that she was within his protected class.  Doc. 1 ¶ 22.  Although not clear, perhaps Foy means to establish a prima facie case by showing that Dallis's appointment to the SSE position was done merely to "circumvent the appearance of racial pretext," and to cover up racial discrimination.  Doc. 49 at 21.  The Court interprets this to be an attempt to take advantage of *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995).  There a Title VII plaintiff was fired, and her position was filled with an individual within her protected class.  However, the Eleventh Circuit stated that "a prima facie case is not wholly dependent upon meeting the fourth requirement of the *McDonnell Douglas* test.  A plaintiff may have a prima facie case based on the first three requirements despite the fact that the employer hired a minority to fill the vacancy[.]"  *Id.*  But before a prima facie case is established based solely on the first three prongs of the *McDonnell Douglas* test, a court "must consider whether the fact that a minority was hired overcomes the inference of discrimination otherwise created by the evidence presented by the plaintiff."[5]  *Id.*  In addressing this argument courts have considered factors such as the time the position was filled in comparison to when the EEOC complaint was filed and the work history of the individual who filled the position in order to determine if an employer's selection was pretextual.  *Id.*

Here, to determine whether Foy has satisfied the prima facie case despite the SSE position being filled by a member of his protected class, the Court will consider the

---

[5] The plaintiff in *Edwards* was ultimately unsuccessful in establishing a prima facie case because she could not show that "the filling of the vacancy by a minority was pretextual."  *Id.*

timing of Dallis's appointment in comparison to Foy's public accusation of discrimination, Dallis's qualifications and history with the Air Force, and the method in which Dallis was appointed to the SSE position.

That Dallis was appointed soon after Foy filed his formal EEO complaint could arguably warrant an inference that Dallis was appointed as a cover-up for racial discrimination. *See* Doc. 36-1 at 13. But Foy undercuts that inference. He states that Dallis was not Smallwood's first choice to fill the position after his accusation of discrimination; Thomas Lamb, a white male, was.[6] Docs. 1 ¶ 20; 38 at 112:8-17. According to Foy, Lamb declined the opportunity and then reached out to Dallis to inform her she would likely be the next person offered the position. Doc. 38 at 112:14-17, 119:21-25. Thus, the Court cannot draw any inference that Dallis was appointed to squelch Foy's race discrimination claim. On the contrary, these facts seem to indicate that race had nothing to do with how Smallwood filled the SSE position.

The record also establishes that Dallis was highly qualified and has had a long, successful career at Robins Air Force Base. Doc. 38-9. She was already a GS-14 at the time of her appointment, while Foy was only a GS-13. *Id.*; Doc. 1 ¶ 8. In fact, Dallis had been a GS-14 since 2008, and she has been in a supervisory role since 2002— even supervising Foy from 2003 through 2005. Docs. 36-2 ¶ 38; 38-9. This is especially relevant considering the selecting official for the SSE position was seeking

---

[6] Although Foy does not raise it, the fact that Lamb was the first choice could support an argument, a weak one, that Lamb's selection could satisfy the fourth prong of the prima facie case even though he rejected the offer. But even if Foy had raised the argument and even assuming he established a prima facie case, he has not been able to rebut the defendant's legitimate, non-discriminatory reason for not promoting him.

someone with "the right mix of technical expertise and managerial expertise[.]"  Doc. 39-1 at 5.  In short, the evidence shows Dallis was qualified for the SSE position.

Foy also argues that the defendant did not apply the proper procedure when selecting Dallis for the SSE position.  Doc. 49 at 14.  Foy cites an Air Force Manual which states, "all GS-14/15 and equivalent level position vacancies … require competition and the use of a hiring panel[.]"  Doc. 42-8 at 12.  Foy states the defendant did not follow this policy and streamlined Dallis's appointment "as a pretextual device to specifically disguise an act of discrimination because Cynthia Dallis was black and from a protected class."  Doc. 49 at 18.  However, the Manual Foy cites was not yet in effect when these events took place in 2016.  Doc. 42-8 at 1.  Foy, however, also attached, and even cites in other places, an older version of the Manual which states, "all *GS-15* position vacancies in the competitive service … require AF-wide competition unless the position is to be filled by reassignment."  Docs. 42-7 at 9 (emphasis added); 49 at 14, 15, 17.  The SSE position was a GS-14 position and was filled via reassignment.  Thus, based on the only Manual in the record that could possibly be controlling in 2016, reassigning Dallis to the position without an interview was not contrary to the defendant's policies at the time.

In conclusion, Foy has neither shown that the position he applied for was filled with someone outside of his protected class, nor that the position was filled with someone within his protected class to cover up discrimination.  Foy has failed to establish a prima facie case.

*2.  Legitimate, Non-Discriminatory Reason*

Even if Foy had made a prima facie case, the defendant has shown a legitimate, non-discriminatory reason for not hiring Foy for the SSE position.  Smallwood, the official in charge of filling the SSE position, asserted Foy did not have the right mix of expertise he sought in a candidate.  Specifically, he stated:

> Because none of the individuals both interviewed and on the list of qualified candidates met the right mix of technical expertise and managerial expertise I felt the position required, I returned the [position] unfilled.  My intent was to re-advertise the position to enable other Services (Navy and Army) applicants to apply to get the most qualified individual into the position.  Before the position was re-advertised, however, I discovered a highly qualified GS-14 at Robins AFB was interested in the position.  Cynthia Dallis came with significant engineering experience and management/supervision experience.  She had 3 years of experience working in the Corrosion Prevention and Control Office.  She was an ideal fit and we were able to coordinate a management reassignment to move her into the job.

Doc. 39-1 at 5.

Not promoting Foy due to his lack of "the right mix of technical expertise and managerial expertise" is a legitimate, non-discriminatory reason.  Thus, the defendant has carried her burden of providing a legitimate, non-discriminatory reason for not promoting Foy.

*3.  Pretext*

After a defendant has produced legitimate, non-discriminatory reasons for not hiring or promoting a plaintiff, the plaintiff may rebut these reasons by showing they are pretextual.  *Burdine*, 450 U.S. at 256.  To show that a defendant's reasons for failing to promote him are pretextual, a plaintiff must either persuade the court that the defendant was motivated by a discriminatory reason or the employer's non-discriminatory

explanation should not be believed.  *Id.* at 256.  As best the Court can tell, Foy makes two arguments that might be construed as efforts to demonstrate pretext.

   a. Interview and Resume Grading Procedure

  Although Foy's complaints about the interview and resume grading procedures are not raised to demonstrate pretext—see discussion below—just to be safe, the Court considers those complaints here because if they have any relevance, it is to show pretext.  Doc. 49 at 4.

  Foy advances a statistical analysis prepared by a graduate student[7] to attack the interview procedure.  That effort fails.  First, Foy does not explain how the interview grading procedure is related to the defendant seeking a candidate who "met the right mix of technical expertise and managerial expertise [the hiring official] felt the position required," which is the defendant's articulated reason for not promoting Foy or any other candidate who interviewed for that matter.  Docs. 36-1 at 16; 39-1 at 5.  It seems, instead, the interview grading process is wholly unrelated to the defendant's stated reason for not promoting Foy.  The evidence shows Foy could have received a much higher interview grade and still not have received the promotion because of the defendant's stated reason—as was the case with one interviewee whose interview score more than doubled Foy's.  Doc. 36-3.  Therefore, any argument concerning the probabilities of two panelists scoring interviews similarly is unrelated to the defendant's desire to select someone with more technical and managerial experience.  Thus, an analysis of the interview grading process does not reveal the defendant's proffered reason to be unworthy of credence.

---

[7] The Court entered an Order stating it would not allow Foy to rely on expert testimony due to the untimely designation of expert witnesses.  Doc. 51.  Nonetheless, the Court considers that evidence here.

Foy also argues one of the resume graders, Russell Alford, graded the African American candidates' resumes on average 7.5 points lower than Smallwood did. Doc. 49 at 10. Further, Alford graded the white candidates' resumes 3.8 points higher on average than Smallwood did. *Id.* However, like Foy's interview grading argument, this evidence is unrelated to the defendant's stated reason for not hiring Foy, and does not persuade the Court that the defendant's stated reason was pretextual. Further, the evidence appears to indicate that only the highest resume score would be used in calculating the applicants' final score, and the lower one would be thrown out. Doc. 36-3. In other words, a bad review from one resume grader could not by itself affect an applicant's final score. Also, Smallwood made the final hiring decision; the fact that Smallwood scored Foy's and another African American applicant's resumes higher than Alford scored them undercuts Foy's claim that Smallwood's failure to promote Foy was due to racial discrimination.

Thus, it seems Foy's argument is the interview and resume grading process discriminated against him because he is African American, and the process ensured multiple white applicants would receive a higher score than him. Then, the same man who oversaw the resume and interview grading process decided not to promote any of the white applicants who scored higher than Foy in the allegedly rigged process, and instead selected a well-qualified African American woman to fill the SSE position who did not go through this process. This does not establish pretext.

The arguments Foy makes concerning the interview and resume grading procedures do not persuade the Court that the decision not to promote him was

motivated by racial discrimination or that the defendant's stated non-discriminatory reason for not promoting him is unworthy of credence.

      b.  Qualifications Argument

Foy also argues he was highly qualified for the position he sought, and the Court takes that as an effort to establish pretext.  Even if Foy argued he was the best qualified applicant, which he does not, that would be inadequate.[8]  "[I]n a failure to promote case … a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the officer who received the position he coveted."  *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003).  Instead, a plaintiff must show he was so clearly better qualified than the selected individual that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff."  *Id.* at 1340 (quotation marks omitted) (quoting *Deines v. Tx. Dept. of Protective and Regul. Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)).  Given Dallis's clearly superior qualifications, Foy cannot show that no reasonable person would select Dallis for the SSE position.

In sum, Foy has failed to make out a prima facie case, and even if he had, he has not shown the defendant's proffered reason to be unworthy of credence.

## B. Convincing Mosaic of Circumstantial Evidence

The Court recognizes that "establishing the elements of the *McDonnell Douglas* framework is not … the *sine qua non* for a plaintiff to survive a summary judgment

---

[8] Foy does argue he has a "Professional Military Education Air War College degree," while Dallis does not.  Doc. 49 at 20.  However, he does not go so far as to say he was more qualified than Dallis, and as the defendant points out, nothing in the record indicates an Air War College degree was necessary for the vacant position.  Doc. 36-1 at 18.

motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  A plaintiff can always survive summary judgment by creating a triable issue concerning the employer's discriminatory intent.  A plaintiff does this by presenting "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)).  However, Foy has not presented such evidence here.

But Foy does argue that, when mathematically analyzed, the defendant's execution of the interview grading process shows "**statistical proof**" of discriminatory intent because two of the interview panelists evaluated the applicants with very little variation.  Doc. 49 at 3 (emphasis in original).  This is the evidence the Court found insufficient to establish pretext, but the Court considers it again here.  Foy asserts "there is statistical proof that shows the overall probability of two scores within 2 points on the panel is 0.000976 or 1 in 1025." *Id.* at 4.  In other words, Foy applies pure chance statistics when calculating the probability that two panelists would give an interviewee a similar numerical evaluation.  Foy's statistics might be useful if the panelists were drawing a random card from a deck or rolling dice.  But his argument is clearly flawed as it relates to the panelists—who by all accounts were using a detailed rubric—giving similar scores to the interviewees. [9]

---

[9] Oddly enough, Foy offers this statistical evidence not to support a mosaic argument and, as noted, not to show pretext, but rather because, he says, a Title VII plaintiff can establish discriminatory intent "through statistical proof."  Doc. 49 at 3.  However, these are not the type of statistics needed to support a claim for race discrimination.  Instead, a plaintiff would have to point to evidence of the promotion/selection rates of equally qualified applicants within and outside of a protected class. *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir. 1994); *Brown v. Am. Honda Motor Co., Inc.*, 939 F.2d 946, 952 (11th Cir. 1991); *Evans*, 131 F.3d at 963.

In sum, and although Foy does not raise a mosaic argument, the facts and arguments presented by Foy fail to create a convincing mosaic of circumstantial evidence which would allow a jury to conclude Foy was not granted the promotion because of his race.

## IV. CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment (Doc. 36) is **GRANTED**.

**SO ORDERED**, this 21st day of December, 2020.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT